IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **MALIK BEY**, *et al.*, | * |
| Plaintiffs, | * |
| v. | * Case No.: GJH-15-1329 |
| **MIDLAND CREDIT MANAGEMENT, INC.**, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In this action, which was removed to this Court from the Circuit Court for Prince George's County, Maryland, pro se Plaintiffs Malik Bey and Dawud Best, individually and on behalf of others similarly situated, (collectively, "Plaintiffs")[1] allege that Defendants Midland Credit Management, Inc. ("Midland Credit") and Midland Funding, LLC ("Midland Funding") (collectively, "Defendants" or "Midland") violated provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601 *et seq.*, the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-101 *et seq.*, and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et seq.* See ECF Nos. 1 & 2. Presently pending before the Court is

---

[1] A third Plaintiff, Kimberly Alston, is also named in a First Amended Complaint, *see* ECF No. 6, but the First Amended Complaint was not properly filed in the state court action before removal to this Court because it did not include a certificate of service. *See* Md. Rule 1-323("The clerk shall not accept for filing any pleading or other paper requiring service, other than an original pleading, unless it is accompanied by an admission or waiver of service or a signed certificate showing the date and manner of making service."); *Lovero v. Da Silva*, 28 A.3d 43, 49–50 (Md. Ct. Spec. App. 2011) ("[I]t is clear that in adopting Rule 1-323, and its predecessors, the Court of Appeals intended that a pleading or paper requiring service that did not contain the appropriate proof of service was not to become a part of any court proceeding by being 'filed' in the court file of such proceeding."). Thus, the original Complaint, ECF No. 2, is the operative Complaint.

Defendants' Motion to Compel Arbitration and to Stay Proceedings, or, In the Alternative, to Dismiss the Complaint.[2] ECF No. 12. The Motion is fully briefed and no hearing is necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons that follow, Defendants' Motion is **GRANTED**.

## I.  BACKGROUND

According to the Complaint, Midland Funding "is one of the nation's largest buyers of unpaid debt" and it works with its "affiliate, Midland Credit . . . , to service accounts." ECF No. 2 at ¶ 3. Mr. Bey alleges that, in October 2012, Midland Credit "bought a debt from Citibank, N.A. in which [Mr. Bey] had an unpaid financial obligation," but the only information that Midland Credit had respecting the "alleged debt" was the name, address, last payment date, charge-off date,[3] and balance of the debt.[4] *Id.* at ¶¶ 4–5. The account had been charged off by Citibank on November 9, 2011. *Id.* at ¶¶ 21, 26. On October 21, 2012, Midland Credit sent a letter to Mr. Bey that was captioned "NOTICE OF NEW OWNERSHIP *AND* **PRE-LEGAL REVIEW**" and stated that Midland Credit was considering forwarding the account to an attorney for possible litigation. *Id.* at ¶ 8 (emphasis in original). Midland Credit never did forward the account to an attorney, however, and Mr. Bey alleges that it only threatened to do so

---

[2] Also pending is Plaintiffs' Motion to Strike Defendants' Reply, or, In the Alternative, for Leave to File a Surreply. ECF No. 23. Although Federal Rule of Civil Procedure 12(f) allows the Court to strike "redundant, immaterial, impertinent or scandalous matter" from a *pleading*, a motion pursuant to Rule 12(f) may not be used to strike a brief. *See Anusie-Howard v. Todd*, 920 F. Supp. 2d 623, 627 (D. Md. 2013), *aff'd*, 615 F. App'x 119 (4th Cir. 2015) (denying motion to strike and noting that "[a] motion is not a pleading."). With respect to their request for leave to file a surreply, Plaintiffs seek to provide the Court with their own declarations indicating that they never received nor agreed to the relevant arbitration agreements. *See id.* at 4–5; ECF Nos. 23-1 & 23-2. Plaintiffs have not shown, however, that these declarations, which are based on their own first-hand knowledge, include information that was unavailable to them when they responded to Defendants' Motion. Accordingly, their Motion will be denied. *See, e.g., McNeil v. Loyola Univ.*, No. CIV. WDQ-13-1473, 2014 WL 320494, at *11 (D. Md. Jan. 27, 2014) (denying motion for leave to file surreply where party had "not argued or shown that the new facts and evidence he presents in his proposed surreply were unavailable when he opposed the motion to dismiss"); *F.D.I.C. v. Cashion*, No. 1:11CV72, 2012 WL 1098619, at *3 (W.D.N.C. Apr. 2, 2012), *aff'd*, 720 F.3d 169 (4th Cir. 2013) (same).

[3] "'Charge off' means the act of a creditor that treats an account receivable or other debt as a loss or expense because payment is unlikely." *Bartlett v. Portfolio Recovery Associates, LLC*, 91 A.3d 1127, 1132 n.4 (Md. 2014) (quoting Md. Rule 3–306(a)(1)).

[4] The debt is under the name "Martin Reed," which is the alias Mr. Bey used when he opened the relevant account. *See* ECF No. 12-3.

"as an unfair and deceptive collection method to scare [Mr. Bey] into paying the alleged debt." *Id.* at ¶ 9. Mr. Bey also alleges, *inter alia*, that Defendants seek to collect from him certain interest that Defendants added to the principal after the debt was charged off by Citibank but before it was sold to Midland Credit. *See id.* at ¶¶ 11–26.

Mr. Best alleges that, on September 26, 2012, Midland Funding purchased a debt from T-Mobile PCS Holdings LLC ("T-Mobile"), in which, according to Midland Funding, Mr. Best had an unpaid financial obligation. *Id.* at ¶ 27. Once again, the only information that Midland Credit obtained respecting Mr. Best's alleged debt with T-Mobile was his name, address, last payment date, charge-off date, and balance. *Id.* at ¶ 28. After Midland Funding purchased the debt, a fee of $163.71 was added to the principal balance, but it is not clear whether that fee was a seller fee added by Defendants or if it was the result of accrued interest. *Id.* at ¶¶ 29–30. Mr. Best alleges that he contacted T-Mobile and asserted that "he was never contractually liable on the account and that he was not legally responsible for the alleged debt." *Id.* at ¶ 32. A T-Mobile representative told Mr. Best that T-Mobile could not verify who was contractually responsible for the debt, but that "all documents and/or information was provided to the debt purchaser and if the debt purchaser does not have the contract [between T-Mobile and Mr. Best], then a contract does not exist." *Id.* at ¶ 33. On February 27, 2015, Mr. Best contacted Midland Funding to inquire about the contract and the basis of the $167.71 fee, and he was told that "Midland did not have any evidence that [Mr. Best] had a contract with T-Mobile[]" and that "Midland 'had no idea' how the interest amount was assessed on the account." *Id.* at ¶ 35.

Plaintiffs initiated this action in state court on March 2, 2015, alleging that Defendants' standard policy and practice is to "purchase no more than an electronic file of names, addresses and amounts owed on accounts" that are in default and that Midland Credit sends alleged debtors

3

"dunning letters" that threaten litigation if the debtors do not make prompt payment, regardless of whether Defendants may properly pursue litigation under a particular state's laws. *Id.* at ¶¶ 44–46. Plaintiffs also challenge Defendants' practice of adding interest to debts prior to the date on which Midland Funding claims to have purchased the debt, where the prior owner of the debt did not charge interest during that period. *Id.* at ¶¶ 48–54.

The present dispute centers on whether Midland, as the purported assignee of all right, title, and interest in Plaintiffs' accounts, may enforce arbitration provisions that were contained in the terms and conditions of the credit card agreement between Mr. Bey and Citibank or the terms and conditions regarding Mr. Best's cellular phone services account with T-Mobile. Both agreements required that all claims relating to each Plaintiff's account be resolved through binding arbitration, and that any such claim must be brought individually, rather than as a class.[5]

---

[5] Specifically, the Citibank agreement stated in relevant part:
> ***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.* . . .**
> **What claims are subject to arbitration?** All claims relating to your account, a prior related account, or our relationship are subject to arbitration . . . .
> **Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. . . .
> This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. . . .

ECF No. 12-8 at 6–7 (emphasis in original). The T-Mobile terms and conditions similarly stated:
> <u>MANDATORY ARBITRATION TO RESOLVE DISPUTES/CLASS ACTION WAIVER/JURY TRIAL WAIVER: ARBITRATION</u>. PLEASE READ THIS PROVISION CAREFULLY. IT MEANS THAT, EXCEPT AS NOTED BELOW, YOU AND WE WILL ARBITRATE OUR DISPUTES. ANY CLAIM OR DISPUTE BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING THIS AGREEMENT, OR THE PROVISION OF SERVICES OR PRODUCTS TO YOU, INCLUDING ANY BILLING DISPUTES ("CLAIM"), SHALL BE SUBMITTED TO FINAL, BINDING ARBITRATION BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA"). . . .
> <u>CLASS ACTION WAIVER.</u> WHETHER IN COURT, SMALL CLAIMS COURT, OR ARBITRATION YOU AND WE MAY ONLY BRING CLAIMS AGAINST EACH OTHER IN AN INDIVIDUAL CAPACITY AND NOT AS A CLASS REPRESENTATIVE OR A CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION. . . .

*See* ECF No. 12-8 at 6–7; ECF No. 22 at 2–3. Defendants argue that, as the assignee of Mr. Bey's Citibank account and Mr. Best's T-Mobile account, it has the right to enforce the respective arbitration agreements and compel arbitration of the claims presented in this action on an individual, non-class basis. *See* ECF No. 12-1 at 10–11, 15–16.

In support of their Motion, Defendants attached certain exhibits purporting to show that the Plaintiffs' respective debts were properly transferred to Midland. In particular, Defendants attached the affidavit of Kyle Hannan, an operations manager for Midland Credit, who indicates that Midland Credit "is the servicer and authorized agent of Midland Funding . . . and manages the debt that Midland purchases." ECF No. 12-4 at ¶ 2. Mr. Hannan stated that, pursuant to an October 17, 2012 Bill of Sale and Assignment executed by Citibank, Citibank sold, assigned, and transferred all rights, title, and interest of a portfolio of charged-off accounts to Midland Funding. *Id.* at ¶ 5. One of those accounts was Mr. Bey's, and the transfer included documents relating to a Home Depot credit card account that he had opened. *Id.* at ¶ 6. The records from Citibank indicated that Mr. Bey opened the account on August 28, 2006, made purchases on the account, and made several payments on the account. *Id.* at ¶ 7. Those records also included the "Card Agreement"—*i.e.*, the terms and conditions—that was associated with the account. *Id.* at ¶ 8. Attached as exhibits to Mr. Hannan's affidavit are the bill of sale from Citibank and an accompanying affidavit of sale by the original creditor, Citibank; "an abstract of the true and correct data from the electronic file pertaining to the Bey Account," including the last four digits of his account number, the date the account was opened, the charge-off date and charge-off amount, the sale amount, and other relevant information; copies of Mr. Bey's credit card

---

**ASSIGNMENT**. We may assign all or part of our rights or duties under the Agreement without such assignment being considered a change to the Agreement, and without notice to you, except to the extent provided by law. . . . Subject to these restrictions, the Agreement will bind the heirs, successors, subcontractors, and assigns of the respective parties, who will receive its benefits. . . .
ECF No. 22 at 2–3, 10 (emphasis in original).

statements, and a copy of the Citibank Card Agreement. *See id.* at ¶¶ 5–8; ECF Nos. 12-5, 12-6, 12-7, 12-8. Notably, the Card Agreement provided that "[t]his Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card." ECF No. 12-8 at 3.

With respect to Mr. Best's account, Mr. Hannan attested that, through a September 19, 2012 Bill of Sale and Assignment, T-Mobile sold and transferred Mr. Best's account in a portfolio of other charged-off accounts. ECF No. 20-1 at ¶ 5. As with Mr. Bey's account, Defendants attached a copy of that bill of sale, as well as "an abstract of the true and correct data from the electronic file pertaining to the Best Account, which was transferred by T-Mobile to Midland [Funding]," including the last four digits of his account number, the date the account was opened, the last payment date, the sale amount, and other relevant information. *See* ECF Nos. 12-9, 12-12. Those records also reflected that Mr. Best opened the account with T-Mobile on October 20, 2005, and that his last payment to T-Mobile was made on July 19, 2010. ECF No. 12-9; *see also* ECF No. 20-1 at ¶¶ 7–8. Defendants also provided copies of the relevant terms and conditions that applied to Mr. Best's T-Mobile Account.[6] *See* ECF Nos. 12-10, 12-11. Like the Card Agreement related to Mr. Bey's Citibank account, the relevant terms and conditions applicable to Mr. Best's T-Mobile account provided that "[b]y activating or using our service, you agree to be bound by these terms and conditions . . . ." ECF No. 12-10 at 2.

Additionally, Mr. Hannan declared that this information was provided as a matter of his "own personal knowledge of the matters set forth [therein] and based on [his] review of the business records of [Midland Credit] and Midland [Funding]." *See* ECF No. 12-4 at ¶ 3; ECF

---

[6] Defendants also supplemented their briefing with the declaration of Christopher Muzio, the custodian of records for T-Mobile, who attested that the December 2004 T-Mobile terms and conditions that were attached as an exhibit to Defendants' Motion were in effect on October 20, 2015 when Mr. Best opened his T-Mobile account. *See* ECF No. 21-1.

No. 20-1 at ¶ 3. He indicated that the records "were made by, or from information transmitted by, a person with knowledge of the events described therein, at or near the time of the event described" and, in particular, that such records "are kept in the ordinary course of the regularly conducted activity of such person and [Midland Credit]" and that he is "familiar with [Midland Credit's] and [Midland Funding's] record keeping systems." ECF No. 12-4 at ¶ 3; ECF No. 20-1 at ¶ 3. He further indicated that some of the business records he relied on "were created by businesses other than [Midland Credit] or Midland [Funding]" but that those records "have been incorporated into the business records of [Midland Credit] and Midland [Funding] and are relied upon by them in conducting their business." ECF No. 12-4 at ¶ 4; ECF No. 20-1 at ¶ 4.

## II.   STANDARD OF REVIEW

A court may compel arbitration under the Federal Arbitration Act (the "FAA") if the parties agreed in writing to arbitrate the dispute. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002); *see also* 9 U.S.C. § 2 ("[A]n agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). The FAA reflects the strong federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927 (1983). But "even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins*, 303 F.3d at 501. "Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir.1998) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49, 106 S.Ct. 1415 (1986)).

Courts in this District have recognized that "motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004); *see also PC Const. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012). But where the parties dispute the validity of an arbitration agreement, "[m]otions to compel arbitration . . . are treated as motions for summary judgment." *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011).[7] Therefore, such motions "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505 (1986). Moreover, the Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but it also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir.2003) (internal quotation marks and citations omitted).

### III. DISCUSSION

In response to Defendants' Motion to Compel Arbitration, Plaintiff's raise two main arguments. First, they contend that, because Defendants have supplied only "exemplar" terms

---

[7] *See also Shaffer*, 321 F. Supp. 2d at 683–84 ("[I]n order to effectively assess the merits of this motion [to compel arbitration], . . . the court must consider documents outside the pleadings. As such, the Court will treat Defendant's motion as a motion for summary judgment." (citing Fed. R. Civ. P. 12(c))); *Galloway v. Santander Consumer USA, Inc.*, No. CIV. CCB-13-3240, 2014 WL 4384641, at *2 (D. Md. Sept. 3, 2014) ("[D]istrict courts in this circuit have applied a summary judgment-like standard to the question of whether a contract to arbitrate was formed."); *accord Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 866 (E.D. Wis. 2006) ("Motions to compel arbitration are reviewed under a summary judgment standard as set forth in Federal Rules of Civil Procedure 56(c)" (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980)).

8

and conditions for the respective accounts, rather than signed copies of such agreements, Defendants have failed to satisfy their burden of establishing that Plaintiffs agreed to arbitrate their claims. *See* ECF No. 19 at 2–6. Second, they argue that Defendants have failed to demonstrate that Citibank or T-Mobile did, in fact, assign Plaintiffs' respective debts to Midland. *Id.* at 6–9. Plaintiffs have not argued, however, that if the arbitration agreements are valid, that their claims fall outside of the scope of those agreements, nor have they argued that the class action waivers included in the arbitration agreements are invalid. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S. Ct. 2402 (2003) (noting that courts must determine "gateway matters" to arbitration, "such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy."). Thus, assuming the arbitration agreements are enforceable against Plaintiffs and that Defendants may properly invoke those agreements against Plaintiffs, then all of the claims presented in this case must be submitted to arbitration.

Plaintiffs first argument, namely, that Defendants have failed to prove the existence of a valid arbitration agreement because Plaintiffs have not signed any such agreement, must be disregarded. Although it is true, of course, that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit, . . . [i]t does not follow . . . that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (internal quotation marks and citations omitted).[8] "Rather, a party can agree to submit to arbitration by

---

[8] *See also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) ("We readily conclude that no signature is needed to satisfy the FAA's written agreement requirement. First, the plain language of § 2 requires that the arbitration provision be "written." It does not, however, require that the agreement to arbitrate be signed by either party; nor does any other provision of the FAA."); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002)

9

means other than personally signing a contract containing an arbitration clause." *Id.*; *see also Stephen L. Messersmith, Inc. v. Barclay Townhouse Assocs.*, 547 A.2d 1048, 1050 n.1 (Md. 1988) ("In order to be valid and enforceable, an agreement to arbitrate must be in writing; however, there is no requirement that the writing be signed."). Moreover, the Card Agreement that governed Mr. Bey's use of his credit card and the terms and conditions that governed Mr. Best's use of the T-Mobile cellular services both provided that those agreements would bind each Plaintiff upon their use of the respective services—not upon their signing any such agreement. *See* ECF No. 12-8 at 3; ECF No. 12-10 at 2; *see also Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972–73 (6th Cir. 2007) (finding that employee agreed to arbitrate employment disputes by continuing employment after effective date of alternative dispute resolution program; continued employment constituted employee's acceptance of agreement to arbitrate); *Whitman v. Capital One Bank (USA), N.A.*, No. CIV.A. WMN-09-1737, 2009 WL 4018523, at *2 (D. Md. Nov. 19, 2009) ("Courts have consistently held that [t]he use of [credit] cards amounts to acceptance of the terms of the cardholder agreements." (internal quotation marks and citation omitted)); *Bentaous v. Asset Acceptance, LLC*, No. CIV. JFM-13-3314, 2014 WL 5790946, at *2 (D. Md. Nov. 4, 2014), *appeal dismissed*, 614 F. App'x 669 (4th Cir. 2015) ("[Plaintiff] accepted the terms and conditions [including the arbitration agreement therein] by keeping the computer equipment she initially purchased and by using the account to purchase

---

("Although . . . the FAA requires arbitration agreements to be written, it does not require them to be signed."); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) ("[I]t is well-established that a party may be bound by an agreement to arbitrate even absent a signature. . . . [W]hile the [Federal Arbitration] Act requires a writing, it does not require that the writing be signed by the parties."); *Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987) ("It is established that a party may be bound by an agreement to arbitrate even in the absence of his signature.").

additional computer equipment over the years."). Thus, the fact that Plaintiffs did not sign the respective agreements does not make the arbitration agreements any less binding against them.[9]

Nevertheless, only if Defendants are indeed the assignees of Plaintiffs' debts may they enforce the arbitration agreements that Mr. Bey and Mr. Best entered with Citibank and T-Mobile, respectively. Defendants have submitted sufficient evidence to that effect. Specifically, with respect to Mr. Bey's debt, Defendants have submitted a bill of sale and an accompanying affidavit of sale by the original creditor, Citibank, and, through Mr. Hannan's affidavit, established that Mr. Bey's account was one of the accounts included in that bill of sale. *See* ECF No. 12-4 at ¶¶ 5–6; ECF No. 12-5; ECF No. 12-6. Defendants similarly submitted a bill of sale from T-Mobile with respect to Mr. Best's debt, and again, through Mr. Hannan, established that Mr. Best's account was one of those transferred through that bill of sale. *See* ECF No. 20-1 at ¶¶ 5–6; ECF No. 12-12; *see also Bartlett v. Portfolio Recovery Associates, LLC*, 91 A.3d 1127, 1147 (Md. 2014) (noting that redacted "bill of sale" was not sufficient evidence that assignee had purchased credit card debt, but that proof of assignment was sufficient where it was accompanied by an affidavit of a custodian based on that person's personal knowledge of account records maintained by assignee).

Plaintiffs argue, however, that Mr. Hannan could not properly attest to the reliability of the data contained in Midland's records with respect to Plaintiffs' respective debts because those records came from Midland's predecessors-in-interest—Citibank and T-Mobile—and therefore Mr. Hannan lacks personal knowledge over whether the data contained therein is true and

---

[9] Although Plaintiffs also argue that the dates of the relevant contracts do not coincide with the dates on which Defendants allege that Plaintiffs opened their respective accounts, *see* ECF No. 19 at 2–3, the evidence submitted by Defendants proves otherwise. With respect to Mr. Bey's account, the Card Agreement became effective on February 3, 2009 and was the agreement that was in effect on the date Mr. Bey last made a payment on his account. *See* ECF No. 12-8 at 2; ECF No. 12-6. With respect to Mr. Best's account, the relevant T-Mobile terms and conditions agreement went into effect in December 2004 and were in effect when Mr. Best opened his T-Mobile account on October 20, 2005. *See* ECF No. 12-10 at 2; ECF No. 21-1 at ¶ 5.

11

correct. *See* ECF No. 19 at 7. In essence, they argue that any such evidence regarding Midland's purchase of Plaintiffs' debts is inadmissible and cannot support Defendants' Motion to Compel Arbitration. *See, e.g., Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment"); *Planmatics, Inc. v. Showers*, 137 F. Supp. 2d 616, 620 (D. Md. 2001) ("On a motion for summary judgment, a district court may only consider evidence that would be admissible at trial" (citations omitted)). Although in attesting to the relevant information respecting Plaintiffs' debts Mr. Hannan relied on some business records that were created by businesses other than Midland Credit or Midland Funding, he explained that such records have been incorporated into Midland's business records "and are relied upon by them in conducting their business." *See* ECF No. 12-4 at ¶ 4; ECF No. 20-1 at ¶ 4. Such evidence may properly be considered by the Court under the business records exception to the rule against hearsay. *See* Fed. R. Evid. 803(6); *Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 987 (8th Cir. 2010) ("[A] record created by a third party and integrated into another entity's records is admissible as the record of the custodian entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied."); *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007) ("[A] record of which a firm takes custody is thereby 'made' by the firm within the meaning of the rule (and thus is admissible if all the other requirements [to the business record hearsay exception] are satisfied)."); *see also United States v. Wein*, 521 F. App'x 138, 140 (4th Cir. 2013) (noting that custodian of records need not be able to "confirm the accuracy of the records in order to be a qualified witness" to authenticate business records). Thus, Defendants submitted sufficient evidence to establish that Midland is indeed the assignee of Plaintiffs'

respective debts, and, accordingly, that Defendants may enforce the arbitration agreements entered between Plaintiffs and Midland's predecessors in interest.

Finally, although the FAA requires a court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements, *see* 9 U.S.C. § 3, the United States Court of Appeals for the Fourth Circuit has held that "[n]otwithstanding the terms of § 3 . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). Because all of Plaintiffs' claims in this case are subject to arbitration, dismissal of this action is appropriate.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Arbitration, ECF No. 12, is **GRANTED**, and this action is **DISMISSED**. Plaintiffs' Motion to Strike Defendants' Reply, or, In the Alternative, for Leave to File a Surreply, ECF No. 23, is **DENIED**. A separate Order follows.

Dated: March 23, 2016

GEORGE J. HAZEL
United States District Judge